UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ARTHUR FLEMMING MOLER** | : | **DOCKET NO. 19-cv-0809** |
| **REG. # 27271-171** | | **SECTION P** |
| **VERSUS** | : | **JUDGE JAMES D. CAIN, JR.** |
| **CLARA BATY, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a civil rights complaint filed pursuant to *Bivens v. Six Unknown Named Agents*, 91 S.Ct. 1999 (1971), by plaintiff Arthur Flemming Moler, who is proceeding *pro se* and *in forma pauperis* in this matter. Moler is an inmate in the custody of the Bureau of Prisons and is currently incarcerated at the Federal Correctional Institute in Forrest City, Arkansas ("FCI-FC"). However, his claims relate to events that occurred while he was at the Federal Correctional Institute at Oakdale, Louisiana ("FCIO").

This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of this court. For reasons stated below, **IT IS RECOMMENDED** that the matter be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim on which relief can be granted, under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

**I.
BACKGROUND**

Plaintiff arrived at FCIO on or about March 24, 2018, with grievances regarding matters that occurred at his previous location. Doc. 6-1, p. 3. The staff members from his unit refused to

take his grievances, did not provide enough grievance forms or the required staff verifications for grievances and rejected grievances without independent investigation. *Id*.

He also alleges that during his time at FCIO, several of the named defendants used discriminatory language, telling inmates "get with their own kind," and when someone new arrived, telling them the inmates to "get where they fit." *Id*. at p. 5. When plaintiff was handed over to a black guard to go to the SHU, he was told, "How do you like that for Affirmative Action?" *Id*.

The gravamen of plaintiff's complaint centers around his being placed in the SHU from July 16, 2018, until his transfer out of FCI-FC on September 27, 2018. Plaintiff claims that he became aware of "intentional fraud of unit staff working only 30-35 hours of their 40-hour weekly schedules." *Id*. at p. 11. He alleges when the guards realized that he had been noting this, on July 16, 2018, at 8:00 a.m., he was given a "299 shot" for allegedly being out of bounds the day before. *Id*. He contends that there was no investigation conducted into this alleged infraction and on July 16, 2018, a UDC hearing was held, pursuant to which plaintiff was sanctioned and sent to SHU. Plaintiff argues that he was not given the twenty-four-hour notice prior to a hearing, as required by law. *Id*. at p. 9. Plaintiff states that he did have a prison representative but also claims she was never provided a copy of the charges and was, therefore, unprepared for the hearing. *Id*. at p. 12. Finally, plaintiff claims that, following his hearing and sanctions, he was given a custodial classification, a "Management Variable 'MGTV,'" that he did not deserve. *Id*. at pp. 7-8. In summary, plaintiff argues that because procedures were not followed with respect to the hearing, his Due Process rights were violated and that all actions were taken in retaliation for plaintiff's discovering, and reporting, of the "theft of government funds," by the FCIO staff.

## II.
## LAW & ANALYSIS

### A. *Frivolity Review*

Moler has been granted leave to proceed *in forma pauperis* in this matter. Accordingly, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2), which provides for *sua sponte* dismissal of the complaint or any portion thereof if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to state a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley v. Puckett*, 157 F.3d at 1025 (failure to state a claim).

### B. *Section 1983/Bivens*

Federal law provides a cause of action against any person who, under the color of state law, acts to deprive another of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. A *Bivens* action is the counterpart for those acting under color of federal law of a suit brought under § 1983. *E.g.*, *Abate v. Southern Pacific Transp. Co.*, 993 F.2d 107, 110 n. 14 (5th Cir. 1993); *see also Dean v. Gladney*, 621 F.2d 1331, 1336 (5th Cir. 1980) ("The effect of Bivens was, in essence, to create a remedy for federal officers, acting under color of federal law, that was analogous to the section 1983 action against state officials.") In order

to hold the defendant liable, a plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of federal law; that is, that the defendant was a government actor. *See West v. Atkins*, 108 S. Ct. 2250, 2254–55 (1988).

### C. Theories of the Complaint

Neither 42 U.S.C. §1983 nor its federal analogue, *Bivens*, are themselves sources of substantive rights; rather, they merely provide the method for vindicating rights conferred elsewhere. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 n. 3 (5th Cir. 1999); *Izen v. Catalina*, 398 F.3d 363, 367 n. 3 (5th Cir.2005) (A *Bivens* action is analogous to an action under § 1983 except that § 1983 applies to constitutional violations by state, rather than federal actors; the Fifth Circuit does not distinguish between *Bivens* and § 1983 claims.) Thus, in order to state a valid civil rights claim under either §1983 or *Bivens*, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States; and he must show that the alleged deprivation was committed by a person acting under color of state(in the case of a §1983 complaint) or federal law (in a case filed pursuant to *Bivens*). *See West v. Atkins*, 108 S.Ct. 2250 (1988); *Izen v. Catalina*, 398 F.3d at 367 n. 3.

#### 1. Grievances

Plaintiff complains that when he arrived at FCIO on March 24, 2018, staff refused to take and process his grievances regarding matters that occurred at a previous location. Doc. 6-1, p. 3. He also complains that while in the SHU at FCIO, he was not provided enough grievance forms and when he did submit a grievance, it was rejected as untimely. *Id*. at 4. Plaintiff concedes that grievances were untimely but alleges that this was due to the refusal of the staff to accept and process them. *Id*.

Allegations of dissatisfaction with the investigation and/or rejecting of grievances fail to state a cognizable constitutional claim. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 97 S. Ct. 2532 (1977) (Burger, C.J., concurring) (applauding institution of grievance procedures by prisons but noting that such procedures are not constitutionally required); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (holding that the plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances). Accordingly, this claim lacks an arguable basis in law and is thus frivolous.

### 2.   *Discriminatory Language*

Next plaintiff complains that prison staff used discriminatory language.

Viewed in the light most favorable to the plaintiff, the guards made racially offensive statements to him and other inmates by telling them to "get with their own kind," "get where they fit," and by asking plaintiff, "How do you like that for Affirmative Action?" Threats, verbal taunts, and racial slurs; however, do not give rise to liability under § 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993). Allegations of verbal threats or other derogatory remarks, even racial slurs, do not constitute actionable constitutional violations. *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995). The *Robertson* court noted that "in the Eighth Amendment context, 'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'" *Id.* (citation omitted); *accord Watson v. Winborn*, 67 Fed. Appx. 241, 241 [published in full-text format at 2003 U.S. App. LEXIS 28186], 2003 WL 21108479 (5th Cir. Apr. 21, 2003); *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002).

Plaintiff's claim alleging that FCIO staff used discriminatory language simply does not provide a basis for a federal civil rights lawsuit and should be dismissed as frivolous and for failure to state a claim for which relief can be granted.

### 3. *Custodial Classifications and Assignments*

Next plaintiff complains that his being placed in the SHU, and later given the custodial classification, the "Management Variable 'MGTV,'" that followed him to his next facility, was based on unsubstantiated reasons and only done to stop him from filing grievances and notices to other personnel regarding the alleged fraud being committed by prison guards.

In general, inmates do not have a protected property or liberty interest in their custodial classifications. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.), *cert. denied*, 109 S. Ct. 540 (1988). The Constitution "does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 125 S. Ct. 2384, 2393 (2005). A liberty interest arises, if at all, from state policies or law, subject to the limitations set forth in *Sandin v. Conner*, 115 S. Ct. 2293 (1995). *Id*.

States may, under certain circumstances, create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Id*. at 2300 (citations omitted); *see also Thompson v. Cockrell,* 263 F.3d 423, 425 (5th Cir. 2001).

Applying this analysis, *Sandin*[1] found that an inmate did not have a liberty interest protecting him from a thirty-day assignment to segregated confinement because it was not a

---

[1] While *Sandin* addressed state-created liberty interests under the Fourteenth Amendment, its reasoning applies equally to Fifth Amendment due process claims brought by federal prisoners pursuant to *Bivens*. *See Wilson v.*

dramatic departure from the basic conditions of the inmate's confinement. *Sandin* at 2301. In light of *Sandin*, the Fifth Circuit has held that, absent extraordinary circumstances, placement in administrative segregation housing will never be a ground for a constitutional claim. *Martin v. Scott,* 156 F.3d 578, 580 (5th Cir. 1998).

Moreover, "a prison inmate does not have a protectable liberty or property interest in his custodial classification." *See Wolters v. Fed. Bureau of Prisons*, 352 F. App'x 926, 928 (5th Cir. 2009) (*citing Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995)). Classification of inmates is an administrative function, and prison officials can change an inmate's classification for almost any reason or no reason at all. *See Jackson v. Cain,* 864 F.2d 1235 (5th Cir. 1989); *Wolters v. Federal Bureau of Prisons*, 352 Fed. Appx. 926, 928 (5th Cir. 2009); *Mendoza v. Lynaugh*, 989 F.2d 191, 194 n. 4 (5th Cir. 1993).

Accordingly, as plaintiff has not demonstrated that his confinement in SHU was an atypical and significant hardship in relation to ordinary prison life, he does not have a protected liberty interest in his housing assignment, nor does the change in his custodial classification constitute a violation of his constitutional rights. These claims should be dismissed for failure to state a claim.

### 4. *Disciplinary Hearing Process*

Plaintiff claims that certain defendants, acting under color of federal law, violated his due process rights with regard to the investigation and prosecution arising out of his July 15, 2018 alleged actions.

As mentioned above, in *Sandin v. Conner*, 115 S.Ct. 2293 (1995), the United States Supreme Court clarified when due process protections attach to the prison disciplinary process. The Court held that the Due Process Clause does not afford an inmate a protected liberty interest

---

*Valle*, No. 1:17-cv-664, 2018 U.S. Dist. LEXIS 158997, *fn 2 (W.D. La. Aug. 7, 2017) (*citing Crowder v. True*, 74 F.3d 812, 814-15 (7th Cir. 1996).

that would entitle the inmate to procedural protections in the disciplinary process when the maximum sanction the inmate could receive does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" and the duration of the prisoner's original sentence is not affected. *Id.* at 2301. The Court held that a prisoner's liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Therefore, under the guidance provided by *Sandin*, the Fifth Circuit has held that, as a general rule, only sanctions which result in loss of good time credit or which otherwise directly and adversely affect the prisoner's release date will implicate a constitutionally protected liberty interest. *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir.1995). Later, the Fifth Circuit, commenting on *Sandin*, noted that liberty interests which are protected by the Due Process Clause are generally limited to actions which affect the quantity of time rather than the quality of time served by a prisoner. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997).

In *Garcia v. Currie*, 15-40075, 674 Fed.Appx. 432 (5th Cir. Jan. 30, 2017), the plaintiff maintained that his due process rights were violated when he was placed into dry cell isolation for 44 hours and then into solitary confinement for 38 days without having been charged with a disciplinary infraction and without having received a hearing. The Fifth Circuit held that the Due Process Clause "does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Id*. at 433 (quoting *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997)). Further, it noted that a punitive housing reassignment, by itself, does not trigger any due process protections. *Id*. (citing *Sandin*, *supra*). The court held that, taking

plaintiff's allegations as true, nothing about his placement in either dry cell isolation or solitary confinement had the effect of lengthening his sentence and, accordingly, no liberty interest was implicated, and no due process protections were triggered. *Id.* (internal quotations omitted).

In the instant action, plaintiff was not deprived of any good time credits as a result of the complained of disciplinary action. According to the facts presented, he was sanctioned to the SHU for three months and subsequently transferred with a custody classification status that he felt was undeserved. Doc. 1-6, p. 5. Thus, while the disciplinary action may have caused plaintiff to lose certain privileges, such restrictions did not impose an atypical, significant hardship on plaintiff in relation to the ordinary incidences of prison life and did not have an effect on the length of his sentence. Consequently, no federally protected due process rights were violated in connection with plaintiff's disciplinary hearing and its aftermath.

### 5. *Retaliation*

Finally, plaintiff makes allegations that the actions taken by the defendants were in retaliation for the fact that he had been noting their fraudulent activities and filing grievances and letters regarding his findings.

This Court has previously ruled that retaliation claims are not cognizable under *Bivens*. *Okeayainneh v. United States DOJ*, 2019 U.S. Dist. LEXIS 64633, 2019 WL 1612612 (W.D. La. March 28, 2019); *report and recommendation adopted*, No. 2:19-cv-150, Docket Number 17 (W.D. La. April 12, 2019) (appeal filed); *see also Butler v. Porter*, 2018 U.S. Dist. LEXIS 218270, 2018 WL 6920355 (W.D. La. Sep. 10, 2018); *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 737, 2019 WL 81677 (W.D. La. Jan. 2, 2019) (appeal filed). Accordingly, plaintiff has failed to state a claim upon which relief can be granted.

### III.
#### CONCLUSION

Plaintiff's due process claims lack an arguable basis in law, because, read liberally, his complaint alleges the violations of legal interests which clearly do not exist. *Harper v. Showers*, 174 F.3d at 718. As plaintiff's claims that he was denied due process lack an arguable basis in law, it is recommended that the complaint be dismissed.

Accordingly, **IT IS RECOMMENDED** that this *Bivens* action be **DISMISSED WITH PREJUDICE** under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii), as frivolous and for failure to state a claim on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. **Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 23rd day of September, 2019.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE